

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-13-00419-CV

**DEBBIE ECHOLS AND RHONDA ECHOLS,**

                                      **Appellants**

 **v.**

**GULLEDGE & SONS, LLC, PATRICK SIMMONS,
MARTHA LYNCH, GROESBECK ABSTRACT &
TITLE CO., INC., AND CANNON & SIMMONS
(CANNON & WILSON, PC),**

                                      **Appellees**


_____


**From the 87th District Court
Limestone County, Texas
Trial Court No. 30,287-A**

_____

## MEMORANDUM OPINION

_____

In three issues, appellants, Debbie and Rhonda Echols, advancing pro se, challenge the denial of their motion to recuse and the trial court's granting of summary judgment in favor of appellees, Patrick Simmons, Martha Lynch, and Cannon & Wilson, P.C.  We affirm.

## I. BACKGROUND

The facts in this dispute have been litigated numerous times in this Court and in federal court and, thus, are well-established. *See generally Echols v. Gulledge & Sons, LLC*, No. 10-12-00185-CV, 2012 Tex. App. LEXIS 7486 (Tex. App.—Waco Aug. 30, 2012, pet. denied) (mem. op.); *In re Echols*, No. 10-11-00426-CV, 2011 Tex. App. LEXIS 8972 (Tex. App.—Waco Nov. 9, 2011, orig. proceeding) (mem. op.); *In re Echols*, No. 10-11-00218-CV, 2011 Tex. App. LEXIS 4652 (Tex. App.—Waco June 16, 2011, orig. proceeding) (mem. op.). The underlying lawsuit pertains to a November 14, 1996 real-estate transaction involving 46.198 acres of land situated in the J.A. Head Survey area of Limestone County, Texas. The property in question was originally owned by Arbra Echols and his wife, Patsy Echols. It is undisputed that in May 1993, Arbra and Patsy executed a third-party deed of trust to Farmers Home Administration, now known as the Farm Service Agency ("FSA"), to secure two notes for Arbra's brother, Carlton Echols Sr., and his wife, Irene Echols. However, Arbra and Patsy failed to timely pay taxes on the property.

On April 11, 1996, Debbie and Rhonda contracted to purchase the property with monetary assistance provided by their father, Bonnie Echols. Simmons and his firm served as the closing attorney on the transaction. Based on the valuation of all outstanding liens, Debbie and Rhonda allegedly paid $15,700 for the entire property.

Over ten years after Debbie and Rhonda closed on the property, the second mortgage lienholder, the FSA, claimed that its lien had not been paid, accelerated the

loan, and foreclosed on the property on March 6, 2007. Gulledge & Sons, LLC subsequently purchased the foreclosed property for the price of $47,200.

In their first amended petition, Debbie and Rhonda claimed that they were "unaware of the defect in the title until the possessor cut off the plaintiffs' locks in late August 2007." Debbie attempted to cure the title defect in December 2007, but her efforts were unsuccessful.

On January 20, 2009, Debbie and Rhonda filed their pro se original petition against Groesbeck Abstract and Title Co, Inc. d/b/a Limestone County Title Company, asserting numerous claims. Apparently, Debbie and Rhonda had already filed pro se lawsuits against the FSA regarding these facts. Subsequently, on February 18, 2011, Debbie and Rhonda filed their pro se original petition against Simmons, Lynch, and Cannon & Simmons (now known as Cannon & Wilson, P.C.), alleging claims of negligence, breach of fiduciary duty, fraudulent concealment, fraud by non-disclosure, and per se negligence. The trial court consolidated all of Debbie and Rhonda's pending lawsuits, resulting in one lawsuit—Cause No. 29,385-A, Debbie Echols and Rhonda Echols v. Gulledge & Sons, L.L.C.; Groesbeck Abstract & Title Co., Inc. d/b/a Limestone County Title Company; Patrick Simmons, Martha Lynch, and Cannon & Simmons (now known as Cannon & Wilson, P.C.). *See Echols*, 2012 Tex. App. LEXIS 7486, at *1.

Thereafter, Debbie and Rhonda filed a motion for partial summary judgment against the defendants in this appeal; this motion was denied on April 27, 2012. However, on the same day, the trial court granted a summary-judgment motion filed by

Simmons, Lynch, and Cannon & Wilson, P.C. On October 25, 2013, the trial court severed Debbie and Rhonda's causes of action against Simmons, Lynch, and Cannon & Wilson, P.C. from their claims against the other parties. In its October 25, 2013 order, the trial court noted that Debbie and Rhonda's claims against Simmons, Lynch, and Cannon & Wilson, P.C. "will be disposed of, and will be final and immediately appealable." This appeal followed.

## II. SUMMARY JUDGMENT

In their first two issues, Debbie and Rhonda argue that the trial court erred in granting summary judgment in favor of appellees because they presented more than a scintilla of probative evidence to raise a genuine issue of material fact. Debbie and Rhonda also allege that the trial court should have granted their summary-judgment motion because they are entitled to judgment as a matter of law.

### A. Applicable Law

We review de novo a trial court's ruling on a summary-judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.

2006). The trial court must grant the motion unless the non-movant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Pennzoil Caspian Corp.*, 994 S.W.2d at 834; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) ("More than a scintilla of evidence exists when the evidence supporting the finding, as a whole 'rises to the level that would enable reasonable and fair-minded people to differ in their conclusions.'" (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995))). To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action; or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). If the movant meets its burden, the burden then shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We indulge every reasonable inference

and resolve any doubts in the non-movant's favor. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When, as here, the trial court's summary-judgment order does not state the basis for the court's decision, we must uphold the judgment if any theory advanced in the summary-judgment motion is meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## B.     Negligence Claims

As stated earlier, Debbie and Rhonda asserted claims of negligence, breach of fiduciary duty, fraudulent concealment, fraud by non-disclosure, and per se negligence against appellees. In response, appellees contended, in their summary-judgment motions, that Debbie and Rhonda's negligence claims are barred by the applicable statute of limitations.

A statute of limitations is a procedural device operating as a defense to limit the remedy available from an existing cause of action. *Cadle Co. v. Wilson*, 136 S.W.3d 345, 350 (Tex. App.—Austin 2004, no pet.). A cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (op. on reh'g) (citing *Knott*, 128 S.W.3d at 221). The general rule governing when a claim accrues, to start limitations running, is the "legal injury rule," which provides that a claim accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).

A cause of action for negligence accrues on the date the negligent, injury-producing act is committed. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). "[T]he commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). The statute of limitations period on a negligence claim is two years from the date the cause of action accrued. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2014); *see Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 640 (Tex. App.—Dallas 2013, no pet.).

In their first amended petition against appellees, Debbie and Rhonda acknowledged that the property was foreclosed on March 6, 2007, and that they first learned about the alleged "defect in the title" to the property in August 2007. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 569 (Tex. 2001) (stating that a judicial admission includes assertions of fact, not pleaded in the alternative, in the live pleadings of a party); *Humphries v. Humphries*, 349 S.W.3d 817, 824 (Tex. App.—Tyler 2011, pet. denied) (noting that when a party judicially admits facts, the party is estopped from claiming the contrary and that a true judicial admission relieves the other party's burden of proof). However, the record demonstrates that Debbie and Rhonda did not file their pro se original petition against appellees until February 18, 2011—approximately three-and-a-half years after they alleged to have first learned about the "defect in the title" and about four years from the date of the alleged injury. Because the record demonstrates that Debbie and Rhonda did not assert their

negligence claims against appellees within two years of the commission of the negligent, injury-producing act, and because Debbie and Rhonda have not raised a genuine issue of material fact as to appellees' limitations affirmative defense, we cannot say that the trial court erred in granting summary judgment in favor of appellees on limitations grounds as to Debbie and Rhonda's negligence claims.[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); TEX. R. CIV. P. 94 (providing that it is an affirmative defense that a statute of limitations bars a claim); *Kenneco Energy, Inc.*, 962 S.W.2d at 514; *Dunmore*, 400 S.W.3d at 640; *see also Fielding*, 289 S.W.3d at 848; *Cathey*, 900 S.W.2d at 341.

---

[1] To the extent that Debbie and Rhonda argue that appellees fraudulently concealed the "defect in the title" and that this concealment tolled the limitations period on their negligence claims, we note that Debbie and Rhonda rely on Debbie's conclusory, self-serving affidavit as proof of their fraudulent concealment claims. A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Eberstein v. Hunter*, 260 S.W.3d 626, 630 (Tex. App.—Dallas 2008, no pet.). Conclusory statements in affidavits are not competent evidence to support summary judgment because they are not credible or susceptible to being readily controverted. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *see also Eberstein*, 260 S.W.3d at 630. Other than Debbie's conclusory statements, the Echols do not direct us to competent summary-judgment evidence establishing their fraudulent-concealment contention. *See Hay v. Shell Oil Co.*, 986 S.W.2d 772, 778 (Tex. App.—Corpus Christi 1999, pet. denied) (stating that fraudulent concealment is an equitable doctrine that provides an affirmative defense to the plea of limitations and that the party asserting fraudulent concealment has the burden to come forward with proof raising an issue of fact regarding fraudulent concealment); *see also McMahan v. Greenwood*, 108 S.W.3d 467, 493 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("To prove fraudulent concealment, a plaintiff must demonstrate the defendant had actual knowledge that a wrong occurred, a duty to disclose the wrong, and a fixed purpose to conceal the wrong."). And even if Debbie and Rhonda proffered evidence establishing their fraudulent-concealment contention, their reliance on the theory does not save their negligence claims. "Proof of fraudulent concealment . . . does not prohibit an assertion of limitations altogether, but does suspend the running of limitations until such time as the plaintiff learned of, or should have discovered, the deceitful conduct or the facts giving rise to the cause of action." *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999). As mentioned earlier, Debbie and Rhonda admitted in their petition that they learned of the "defect in the title" in August 2007, but did not file suit against appellees until approximately three-and-a-half years later. Thus, Debbie and Rhonda's reliance on the doctrine of fraudulent concealment is unfounded. *See Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008); *see also Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983) ("The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action.").

## C.     Remaining Claims

With respect to Debbie and Rhonda's remaining claims, appellees argued in their summary-judgment motions that the claims were really general legal malpractice claims that were improperly fractured.  Determining whether allegations against a lawyer—labeled as breach of fiduciary duty, fraud, or some other cause of action—are actually claims for professional negligence is a question of law to be determined by the court. *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Murphy v. Gruber*, 241 S.W.3d 689, 692 (Tex. App.—Dallas 2007, pet. denied); *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [14th Dist.] 1998, pet. denied)). Complaints about an attorney's care, skill, or diligence in representing a client implicate the duty of ordinary care and sound in negligence.  *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426 (Tex. App.—Austin 2009, no pet.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)); *see Cunningham v. Hughes & Luce, L.L.P.*, 312 S.W.3d 62, 67 (Tex. App.—El Paso 2010, no pet.) (noting that a legal malpractice claim is based on negligence).

A review of the first amended petition indicates that the crux of Debbie and Rhonda's claims against appellees for breach of fiduciary duty, fraud, and fraud by non-disclosure was that appellees did not properly carry out the terms of the Settlement Statement, including failing to obtain a release of the FSA lien and failing to disburse the proceeds from the sale of the property, and inadequately fulfilled the duties of a closing attorney.  In other words, Debbie and Rhonda's remaining claims against appellees amount to claims for professional negligence.  *See, e.g., Samson v. Ghadially*,

No. 14-12-00522-CV, 2013 Tex. App. LEXIS 10439, at *12 (Tex. App.—Houston [14th Dist.] Aug. 20, 2013, no pet.) (mem. op.) (noting that allegations concerning an attorney's delay or failure to handle a matter entrusted to the attorney give rise to a claim for professional negligence); *Meullion v. Gladden*, No. 14-10-01143-CV, 2011 Tex. App. LEXIS 9334, at **12-13 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.) (concluding that a client's claims for fraud, breach of fiduciary duty, and breach of contract were claims for professional negligence when the client alleged the attorney drafted a habeas petition that the attorney "knew would fail").  Indeed, with respect to their breach of fiduciary duty claim, Debbie and Rhonda referenced their dissatisfaction with the outcome of their grievances filed against Simmons with the State Bar of Texas and the Office of the Chief Disciplinary Counsel—grievances that were resolved in favor of Simmons.

The anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims, such as fraud, breach of contract, breach of fiduciary duty, or violations of the Texas Deceptive Trade Practices Act.  *Won Pack v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied) (citing *Beck*, 284 S.W.3d at 426-27); *see Murphy*, 241 S.W.3d at 693 ("Texas courts do not allow plaintiffs to convert what are really negligence claims into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA.").  For the anti-fracturing rule to apply, the crux of Debbie and Rhonda's complaints must focus on the quality or adequacy of the attorney's representation, which is the case here.  *See Murphy*, 241 S.W.3d at 692-93.  Moreover, improperly-fractured claims are subject to summary

judgment when the plaintiff's negligence claim is disproved as a matter of law or barred by limitations. *See Greathouse*, 982 S.W.2d at 172 (concluding that summary judgment was proper against fractured claims when the attorney disproved the negligence claim).

Therefore, based on the foregoing, we conclude that Debbie and Rhonda's remaining claims against appellees were improperly-fractured, professional-negligence claims. *See Won Pack*, 313 S.W.3d at 457; *Murphy*, 241 S.W.3d at 692-93; *see also Samson*, 2013 Tex. App. LEXIS 10439, at *12; *Meullion*, 2011 Tex. App. LEXIS 9334, at **12-13. And because we have concluded that Debbie and Rhonda's negligence claims were barred by limitations, we cannot say that the trial court erred in granting summary judgment as to Debbie and Rhonda's improperly-fractured, professional-negligence claims against appellees. *See Fielding*, 289 S.W.3d at 848; *see also Greathouse*, 982 S.W.2d at 172. Moreover, because the trial court did not err in granting summary judgment in favor of appellees, we cannot say that the trial court erred in denying Debbie and Rhonda's partial motion for summary judgment.[2] *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007) (citing *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997) ("When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. The reviewing court should render such judgment as the trial

---

[2] Ordinarily, a party cannot appeal the denial of a motion for summary judgment. *See Cont'l Cas. Co. v. Am. Safety Cas. Ins. Co.*, 365 S.W.3d 165, 172 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). However, we may review a denial of a summary judgment when both parties move for summary judgment and the trial court grants one motion and denies the other. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007).

court should have rendered." (internal citations omitted))).   Accordingly, we overrule Debbie and Rhonda's first and second issues.

### III.   DEBBIE AND RHONDA'S RECUSAL MOTION

In their third issue, Debbie and Rhonda challenge the denial of their motion to recuse the trial judge.   Debbie and Rhonda's motion to recuse was based on the argument that the trial judge's impartiality might reasonably be questioned.   *See* TEX. R. CIV. P. 18b(b)(1).   The regional presiding judge heard the motion and denied the same. We review the ruling on a motion to recuse for an abuse of discretion.   *See id.* at R. 18a(j)(1)(A).   In making this determination, we are to review the totality of the evidence presented at the recusal hearing to see if the record reveals sufficient evidence to support the conclusion that the trial judge was unbiased.   *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 250 (Tex. App.—El Paso 2012, no pet.).   We will not reverse the ruling on the motion to recuse if it is within the zone of reasonable disagreement.   *In re C.J.O.*, 325 S.W.3d 261, 267 (Tex. App.—Eastland 2010, pet. denied).

The movant bears the burden of proving that a recusal is warranted and satisfies that burden only if he or she shows bias or impartiality to such an extent as to deprive him or her of a fair trial.   *See Abdygapparova v. State*, 243 S.W.3d 191, 196 (Tex. App.— San Antonio 2007, pet. ref'd).   Bias sufficient to warrant a recusal commonly stems from an extrajudicial source.   *Id.*   However, when a party seeks recusal based on in-court proceedings, "the alleged biased rulings or remarks must display a deep-seated favoritism or antagonism that would make a fair judgment impossible.   *In re C.J.O.*, 325 S.W.3d at 267 (citing *Ludlow v. DeBerry*, 959 S.W.2d 265, 281 (Tex. App.—Houston [14th

Dist.] 1997, no pet.)); *see In re M.C.M.*, 57 S.W.3d 27, 33 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

The focus of Debbie and Rhonda's recusal motion was a conversation the trial judge had with the parties, wherein the trial judge allegedly stated that he and Simmons, now a state district judge in Limestone County, were "together" at a judges' conference and "sat next to each other." Debbie and Rhonda assert that: (1) the trial judge said that neither he nor Simmons were worried about Debbie and Rhonda's claims; and (2) Simmons should "just go ahead and file for summary judgment." And finally, Debbie and Rhonda indicated that they were offended when the trial judge said that they "did a good job" but advised them to get a "lawyer."

If a recusal hearing was on the record, no transcript is contained in the record. Nevertheless, other than their self-serving, conclusory allegations, Debbie and Rhonda do not direct us to evidence demonstrating "a deep-seated favoritism or antagonism that would make a fair judgment impossible." *In re C.J.O.*, 325 S.W.3d at 267. Mere assertions of bias, such as those made by Debbie and Rhonda, are insufficient to overcome the presumption of impartiality. *See, e.g., In re Fifty-One Gambling Devices*, 298 S.W.3d 768, 776 (Tex. App.—Amarillo 2009, orig. proceeding) (concluding that the denial of a motion to recuse was appropriate when the record evidence of ex parte communication between the judge and attorney permitted only speculation about what

was said); *Ludlow*, 959 S.W.2d at 284 (finding no abuse of discretion when the evidence did not demonstrate bias from an extrajudicial source).[3]

Given that there is no record of a hearing on Debbie and Rhonda's motion to recuse, and because the only evidence of bias and impartiality that Debbie and Rhonda point to are the accusations contained in their motion to recuse, we cannot say that Debbie and Rhonda satisfied their burden of showing bias or impartiality to such an extent as to deprive them of a fair trial. *See In re C.J.O.*, 325 S.W.3d at 267; *see also Abdygapparova*, 243 S.W.3d at 196. This is especially true considering Debbie and Rhonda's claims were time-barred and improperly fractured. Accordingly, we cannot conclude that the regional presiding judge abused his discretion in denying Debbie and

---

[3] It also noteworthy that the *Ludlow* Court referenced the United States Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). *See Ludlow v. DeBerry*, 959 S.W.2d 265, 283 n.4 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (op. on reh'g). In *Liteky*, the United States Supreme Court stated the following:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . *Not* establishing bias or partiality, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administrations— remain immune.

510 U.S. at 555-56, 114 S. Ct. at 1157 (internal citations omitted) (emphasis in original).

Rhonda's motion to recuse the trial judge.  *See* TEX. R. CIV. P. 18a(j)(1)(A); *see also In re C.J.O.*, 325 S.W.3d at 267.  As such, we overrule Debbie and Rhonda's third issue.

## IV.    CONCLUSION

Having overruled all of Debbie and Rhonda's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
         Justice Davis, and
         Justice Scoggins
Affirmed
Opinion delivered and filed September 11, 2014
[CV06]

